**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

NICHEL S. ADAMS,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        1:15CV00673
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,                           )
                                    )
                Defendant.          )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Nichel S. Adams, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 12; see also Docket Entry 10 (Plaintiff's Memorandum), Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of July 5, 2011. (Tr. 183-97.) Upon denial of those applications initially (Tr. 68-87, 112-16) and on reconsideration (Tr. 88-111,

117-25), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 126-27). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 46-67.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 27-40.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-14), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since July 5, 2011, the alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative disc disease, acute bronchitis, history of reflux esophagitis, and mood disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . . Due to her physical impairments, she is unable to work around concentrated exposure to hazards such as moving machinery or unprotected heights. Due to her respiratory impairment, she cannot work around concentrated exposure to environmental pollutants. Based on her alleged depression and complaints of pain, [Plaintiff] would be limited to unskilled work.

2

. . .

6.   [Plaintiff] is capable of performing past relevant work as in textiles.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [she] can also perform.

. . .

7.   [Plaintiff] has not been under a disability, as defined in the [] Act, from July 5, 2011, through the date of this decision.

(Tr. 32-40 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."  <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are

3

supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

4

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

---

[1]  The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[3] (...continued)
"physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) the Appeals Council erred by failing to vacate the ALJ's decision based on new evidence that "fill[ed] evidentiary gaps and contradict[ed] the findings of the ALJ" (Docket Entry 10 at 3);

2) the ALJ failed to perform "a complete function-by-function analysis and explanation of the nonexertional mental functions associated with [Plaintiff's] mental impairments" (id. at 6), and failed to account for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") (id. at 9-11); and

3) the ALJ failed to "weigh any of the medical opinions in the record []or explain how he reached his [RFC] conclusions" (id. at 11).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-19.)

## 1. New Evidence

In Plaintiff's first issue on review, she asserts that the Appeals Council erred by failing to vacate the ALJ's decision based on new evidence which "fill[ed] evidentiary gaps and contradict[ed] the findings of the ALJ." (Docket Entry 10 at 3.) More specifically, Plaintiff submitted to the Appeals Council 1) a functional capacity evaluation ("FCE") conducted on July 8, 2014, which reflected that Plaintiff could only work at the sedentary to light physical demand level for an 8 hour day (see Tr. 8-14); and 2) a letter from a physician's assistant, Carolyn Green, in which Ms. Green opined that Plaintiff's functional capacity prior to the

8

ALJ's decision on February 27, 2014, "would have been the same as reflected in the [FCE]" (Tr. 7). According to Plaintiff, the Appeals Council erroneously rejected that evidence by finding that the "new information is about a later time" than the period covered by ALJ's decision. (Docket Entry 10 at 3 (citing Tr. 2).) Plaintiff urges the prejudicial nature of that error, because the ALJ expressly noted in his decision that "[t]he record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] was disabled or even had limitations greater than those determined in this decision." (Id. (citing Tr. 37).) Plaintiff argues that, where "'no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record[,]' . . . the Court 'must remand the case for further fact finding.'" (Id. at 5 (citing Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011)).) Plaintiff's contentions do not warrant relief.

"[T]he Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991). "Evidence is new within the meaning of [the Commissioner's regulations] if it is not duplicative or cumulative." Id. at 95-96; see generally Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings,

9

Appeals, Litig., and Law (LEX) Manual, § I-3-306(A) (1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

Here, the Appeals Council considered Plaintiff's new evidence and incorporated it into the record (see Tr. 2, 5, 7-14), but concluded that the evidence "d[id] not provide a basis for changing the [ALJ's] decision," and that it related to "a later time" than February 27, 2014, the date of the ALJ's decision, and "[t]herefore . . . d[id] not affect the decision about whether [Plaintiff] w[as] disabled beginning on or before February 27, 2014" (Tr. 2).

The Appeals Council did not err in its consideration of Plaintiff's new evidence. The evidence qualifies as "new," because the record does not contain any other FCEs or opinions from treating or examining medical providers regarding Plaintiff's work-related abilities. Further, the evidence holds materiality because it provides an opinion regarding Plaintiff's functional abilities that conflicts with the ALJ's (and the state agency consultants') RFC determinations. However, the Appeals Council did not err by concluding that the evidence related to "a later time" than February 27, 2014, the date of the ALJ's decision. (Tr. 2.) The FCE took place on July 8, 2014, over four months after the ALJ's decision, and the Industrial Rehabilitation Coordinator who conducted the FCE expressly noted, "Per today's referral we were

10

asked to determine [Plaintiff's] <u>current</u> functional capacity for a disability rating." (Tr. 8 (emphasis added).) Nothing in the Coordinator's letter summarizing the results or in the FCE itself suggests that the results should apply retrospectively. (<u>See</u> Tr. 8-14.) Although Ms. Green, a physician's assistant at the same office as Plaintiff's treating physician, Dr. John Woodyear, provided a letter opining that Plaintiff's functional abilities prior to the ALJ's decision "would have been the same as reflected in the [FCE]" (Tr. 7), the Appeals Council did not err in disregarding that opinion. So far as the record reflects, Ms. Green treated Plaintiff on only one occasion to conduct a gynecological annual examination (<u>see</u> Tr. 485-87), and Ms. Green did not support her opinion with any explanation or objective findings (<u>see</u> Tr. 7). No basis thus exists to require the Appeals Council to accept Ms. Green's conclusory opinion that Plaintiff's FCE results should apply retrospectively, particularly given the Coordinator's express statement that the FCE addressed only Plaintiff's <u>current</u> abilities (<u>see</u> Tr. 8).

In short, the Appeals Council did not err in its consideration of Plaintiff's new evidence.

## 2. Function-by-Function Analysis

Plaintiff next asserts an entitlement to relief because the ALJ failed to perform a function-by-function analysis of Plaintiff's mental work-related limitations, in violation of Social

Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1, 3, 6 (July 2, 1996) ("SSR 96-8p"), and Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). (See Docket Entry 10 at 6-11.)   In particular, Plaintiff argues that the ALJ did not provide "functional analysis of [Plaintiff's] ability for specific work-related mental functions such as her ability to 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting . . . .'" (Id. at 8 (citing SSR 96-8p, 1996 WL 374184, at *6).)   Further, Plaintiff contends that the ALJ failed to include adequate restrictions in the RFC and corresponding hypothetical question(s) to the VE arising out of Plaintiff's mild restriction in daily activities and social functioning and moderate limitation in CPP.   (See id. at 8-11.)   According to Plaintiff, the ALJ's restriction to "unskilled work" (Tr. 35) did not sufficiently account for Plaintiff's moderately impaired ability to stay on task, in violation of Mascio, 780 F.3d at 638 (Docket Entry 10 at 9-11).   Plaintiff's arguments in this regard fail to entitle her to remand.

RFC measures the most a claimant can do despite any physical and mental limitations.   Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a).   An ALJ must determine a claimant's

12

exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

13

The Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. <u>Mascio</u>, 780 F.3d at 636–37. The Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," <u>Mascio</u>, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" <u>id.</u> (internal brackets and ellipsis omitted) (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, although Plaintiff faults the ALJ for not parsing out all of the different mental work-related abilities in the RFC (<u>see</u> Docket Entry 10 at 8), Plaintiff did not testify to any limitations in her cognition, memory, concentration, judgment, stress toleration, or ability to interact with co-workers/supervisors (<u>see</u> Tr. 49-62);[5] nor has she cited to any record evidence supporting such limitations (<u>see</u> Docket Entry 10 at 8-11). Accordingly, any

---

[5] Plaintiff's vague testimony that her difficulty sleeping due to back pain "drains" her such that she "can't think right" (Tr. 56) does not invalidate the ALJ's decision that Plaintiff could perform the basic mental requirements of unskilled work (<u>see</u> 20 C.F.R. §§ 404.1568(a), 416.968(a) (defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"), particularly in light of her testimony that she drives a car, cooks, cleans, does laundry, grocery shops, watches her grandchildren, and visits with her daughter (<u>see</u> Tr. 54-55; <u>see also</u> Tr. 235). Significantly, Plaintiff did not claim a mental impairment or any mental limitations arising out of her physical impairments on her application materials. (<u>See</u> Tr. 225.)

failure by the ALJ to perform a function-by-function analysis of Plaintiff's mental abilities, where contested evidence did not exist regarding such abilities, constitutes harmless error. Mascio, 780 F.3d at 636 (holding that "remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested"); SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a . . . mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the [ALJ] must consider the individual to have no limitation or restriction with respect to that functional capacity.").

Plaintiff's argument that the ALJ failed to account in the mental RFC for Plaintiff's mild limitations in activities of daily living and social functioning and her moderate limitation in CPP similarly misses the mark.[6] At steps two and three of the SEP, the ALJ must assess the degree of functional limitation resulting from Plaintiff's mental impairments pursuant to criteria in the corresponding mental disorders in the listing of impairments. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c)(2), 416920a(b)(2) & (c)(2). As relevant to the instant case, paragraph B of Listing 12.04 ("Affective [D]isorders") contains four broad functional areas: 1) activities

---

[6] At steps two and three of the SEP, ALJs rate the degree of limitation in the broad functional areas of daily activities, social functioning, and CPP using a "five-point scale: [n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

of daily living; 2) social functioning; 3) CPP; and 4) episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04B; see also 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ's decision must include a specific finding of the degree of limitation in each of those functional areas. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

However, the paragraph B criteria limitations do not constitute an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (emphasis added). Rather, the ALJ uses those limitations to evaluate the severity of Plaintiff's mental impairments at steps two and three of the SEP. Id. "The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C," id., and includes consideration of Plaintiff's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," id. at *6. Thus, the regulations do not require the ALJ to incorporate word-for-word the limitations found in evaluating the severity of mental impairments into either the RFC or any hypothetical question. See Yoho v. Commissioner of Soc. Sec., No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished) (holding ALJ has no obligation to transfer paragraph B findings verbatim to

16

hypothetical question(s)); accord Patterson v. Astrue, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (unpublished).

With regard to the mild limitations in activities of daily living and social functioning, some district courts within the Fourth Circuit have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of those mild limitations or justify the omission of such restrictions. See, e.g., Ashcraft v. Colvin, No. 3:13CV00417RLVDCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required." (emphasis added)); Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into

17

work-related limitations when [the] plaintiff's RFC for work is considered."). Assuming that <u>Mascio</u> applies even in the context of <u>mild</u> limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), the ALJ here sufficiently explained why Plaintiff's <u>mild</u> limitations in daily activities and social functioning did not translate into further restrictions in the RFC.

Concerning daily activities, the ALJ adopted state agency psychological consultant Dr. Tovah M. Wax's opinion that Plaintiff suffered only <u>mild</u> limitation in daily activities, and noted that Plaintiff could drive (<u>see</u> Tr. 37), and "was able to clean the house, cook supper, run errands, do office and computer work, . . . and grocery shop" (Tr. 34). With regard to Plaintiff's ability to socialize, the ALJ again adopted Dr. Wax's finding of <u>mild</u> limitation, and remarked that Plaintiff visited with her daughter (<u>see</u> Tr. 34) and that office notes in 2013 "continued to show that [Plaintiff's] . . . mental status revealed normal mood and affect" (Tr. 37). The ALJ's discussion thus provides "an accurate and logical bridge," <u>Clifford</u>, 227 F.3d at 872, between the mild limitations and the mental RFC determination. <u>See</u> <u>Johnson v. Colvin</u>, No. 6:14-CV-3579-RBH, 2016 WL 462430, at *7 (D.S.C. Feb. 8, 2016) (unpublished) (finding no error in ALJ's omission of restrictions in RFC related to mild limitations in daily activities and social functioning where ALJ relied on "the activity assessment

by the state agency physicians" and the claimant's testimony that
he "played with his dogs, visits with his friends, and wallpapered
his house").  Thus, Plaintiff has not demonstrated error with
respect to either of these broad areas of functioning.

Regarding the ALJ's step three finding that Plaintiff had
<u>moderate</u> limitation in CPP (<u>see</u> Tr. 34), Plaintiff argues that,
under <u>Mascio</u>, the ALJ's "incomplete finding that [Plaintiff] is
limited to unskilled work" does not sufficiently account for such
limitation.  (Docket Entry 10 at 9-10 (citing <u>Mascio</u>, 780 F.3d at
638).)  Indeed, the <u>Mascio</u> court expressly held that "the ability
to perform simple tasks differs from the ability to stay on task"
and that "[o]nly the latter limitation would account for a
claimant's limitation in [CPP]."  <u>Id.</u> at 638.

However, that court also allowed for the possibility that an
ALJ could adequately explain why the mental RFC in question
sufficiently encompasses a moderate limitation in CPP:

> Perhaps the ALJ can explain why [the plaintiff's]
> moderate limitation in [CPP] at step three does not
> translate into a limitation in [her RFC].  For example,
> the ALJ may find that the [CPP] limitation does not
> affect [the plaintiff's] ability to work, in which case
> it would have been appropriate to exclude it from the
> hypothetical tendered to the [VE].  But because the ALJ
> here gave no explanation, a remand is in order.

<u>Id.</u> (internal citation omitted).  A neighboring district court
recently had occasion to discuss this very point:

> <u>Mascio</u> does not broadly dictate that a claimant's
> moderate impairment in concentration, persistence, or
> pace <u>always</u> translates into a limitation in the RFC.

19

> Rather, <u>Mascio</u> underscores the ALJ's duty to adequately
> review the evidence and explain the decision . . . . An
> ALJ may account for a claimant's limitation with
> concentration, persistence, or pace by restricting the
> claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through physician
> testimony, medical source statements, consultative
> examinations, or other evidence that is sufficiently
> evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D.
Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation
adopted by District Judge) (unpublished) (emphasis added).

Here, the ALJ's decision provides a sufficient explanation as
to why a limitation to "unskilled work" (Tr. 35) sufficiently
accounted for Plaintiff's moderate limitation in CPP (<u>see</u> Tr. 34).
At step three, the ALJ considered the opinions of the state agency
consultants with regard to Plaintiff's mental impairment and its
effect on her ability to concentrate. (<u>See</u> Tr. 34.) The ALJ noted
that, at the initial level, the state agency consultant found
insufficient evidence of a medically determinable mental impairment
(<u>see</u> Tr. 82-83) and, at the reconsideration level, state agency
psychological consultant Dr. Wax "noted that [Plaintiff] did not
allege any mental impairment but that there was mention of
depression related to [Plaintiff's] medical condition" (Tr. 34; <u>see
also</u> Tr. 92). The ALJ further discussed Dr. Wax's opinion that
Plaintiff's "functioning was basically independent with constraints
primarily due to her physical condition," and his findings that
Plaintiff had only mild deficits in CPP and non-severe depression.

(Id.)  The ALJ then stated that he gave Plaintiff "the benefit of the doubt" by finding her depression severe and by finding she suffered moderate limitation in CPP.  (Tr. 34.)

Next, the ALJ discussed Plaintiff's statements on a pain questionnaire:

> [Plaintiff] completed a pain questionnaire on February 10, 2012.  She indicated that her pain affected her mentally and she became frustrated and depressed because she was unable to do simple things.  . . . [Plaintiff] indicated that she was able to clean the house, cook supper, run errands, do office and computer work, visit her daughter, and grocery shop.  She indicated that her pain interfered with little things such as sweeping and mopping the floor, working in her flowers, walking, sleeping, and lifting.  The evidence shows that [Plaintiff's] alleged depression is mainly related to her pain; however, I find that [Plaintiff's] depression and her pain would cause limitations in her ability to concentrate or otherwise perform more than unskilled work.

(Id. (emphasis added).)

Lastly, in determining the RFC, the ALJ discussed Plaintiff's testimony and the objective medical evidence (see Tr. 35-37), found Plaintiff's subjective complaints not entirely credible (see Tr. 36), and provided the following analysis regarding Plaintiff's mental impairment and symptoms:

> [T]he medical records and testimony of [Plaintiff], describing her limitations and activities of daily living, demonstrate that such limitations would not interfere with her ability to function independently, appropriately, effectively, and on a sustained basis in accordance with the [RFC]. . . . [Plaintiff] noted that she was depressed on her pain questionnaire but indicated that her depression and frustration were due to her pain. Her mental status examinations have shown [Plaintiff] in no acute distress, alert and oriented, with normal recent

21

and remote memory. She noted that she was "mentally drained" at the hearing but she has never undergone mental health treatment, has never required inpatient hospitalization for a mental impairment, and has never been seen in the emergency room due to mental health issues. . . . Accordingly, the objective medical evidence does not support [Plaintiff's allegations of disabling symptoms and limitations and does not provide a basis for finding limitations greater than those determined in this decision, thus the [RFC] finding in this case is justified.

(Tr. 38 (emphasis added).)

In sum, the ALJ's analysis provides "an accurate and logical bridge," Clifford, 227 F.3d at 872, between the finding of moderate deficit in CPP and the mental RFC determination, by discussing opinion evidence that Plaintiff's CPP deficit fell, at most, toward the mild end of the moderate designation and by highlighting daily activities indicative of an ability to carry out work on a sustained basis (i.e., to stay on task sufficiently well while performing unskilled work). See Able v. Colvin, No. 1:14CV1078, 2016 WL 1229086, at *5 (M.D.N.C. Mar. 28, 2016) (unpublished) (holding ALJ "adequately explained" why limitation to simple tasks encompassed moderate deficit in CPP where ALJ gave "significant weight" to state agency consultant's opinion that, despite such deficit, the claimant could sustain attention and concentration for simple tasks and found consultant's opinion consistent with the claimant's reported daily activities); Burger v. Colvin, No. 7:14CV00190, 2015 WL 5347065, at *14 (W.D. Va. Sept. 14, 2015) (unpublished) (concluding ALJ explained why limitation to tasks

22

involving short, simple instructions sufficiently accounted for the claimant's moderate limitation in CPP where ALJ discussed pertinent record evidence, including the claimant's daily activities, and noting that "ALJ appeared to just give [the claimant] the benefit of the doubt regarding [the moderate] limitation" in CPP); Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, where ALJ relied on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities); Mollett v. Colvin, Civ. No. 2:13-28018, 2015 WL 1481842, at *12 (S.D.W. Va. Mar. 31, 2015) (unpublished) (determining "ALJ properly considered the impact of [the claimant's] mental impairments on his functional ability in assessing his RFC" where ALJ adopted consultative examiner's "moderate" limitations that fell "on the lower end of the [moderate] spectrum").

Under these circumstances, the ALJ's evaluation of Plaintiff's mental RFC does not require reversal or remand.

### 3. Evaluation of Medical Opinions

In Plaintiff's third and final issue on review, she faults the ALJ for failing to weigh the opinions of the state agency consultants regarding Plaintiff's RFC. (See Docket Entry 10 at 12.) According to Plaintiff, "[t]he ALJ is required to evaluate

23

every medical opinion received." (Id.) Plaintiff's contention entitles her to no relief.[7]

The ALJ must evaluate state agency consultant opinions using the factors outlined in the applicable regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions"); SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."); see also Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot

---

[7] Plaintiff also reiterates her arguments from her second assignment of error regarding the ALJ's obligation to perform a function-by-function assessment of Plaintiff's work-related abilities and the ALJ's failure to address Plaintiff's moderate limitation in CPP in the mental RFC. (See Docket Entry 10 at 12-17.) As the undersigned has addressed those arguments in the discussion of Plaintiff's second issue on review, no need exists to reanalyze them.

determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence"). However, an ALJ's failure to weigh a medical source's opinion can amount to harmless error, such as where the plaintiff otherwise fails to show how a proper weighing of the opinion would have altered his or her RFC, see, e.g., Tanner v. Colvin, 602 F. App'x 95, 100–01 (4th Cir. 2015).

Although the ALJ here discussed the state agency consultants's opinions in the context of the step three discussion (see Tr. 34), he neglected to discuss the consultants's RFC determinations or to assign them any weight (see Tr. 37). However, the ALJ's error in that regard remains harmless, because the ALJ's alternate finding at step five, that jobs existed in the national economy that Plaintiff could perform, accommodated the consultants' RFC opinions. At the hearing, the ALJ asked the VE if any jobs existed that an individual could perform if limited to medium, unskilled work with no concentrated exposure to hazards or pulmonary irritants. (Tr. 63.) In response, the VE cited the medium, unskilled jobs of packager (Dictionary of Occupational Titles ("DOT") No. 920.587-018), order picker (DOT No. 922.687-058), and deliverer (DOT No. 299.477-010) (see Tr. 63-64), and the ALJ expressly adopted those jobs in his alternative step five finding (see Tr. 39). The state agency consultants each opined that Plaintiff retained the RFC to perform medium work with frequent

climbing of ramps and stairs, kneeling, and crawling, and occasional climbing of ladders, ropes, and scaffolds, stooping and crouching. (See Tr. 84-85, 94-95.) A review in the DOT of the characteristics of the three jobs relied upon by the ALJ confirms that two of the three, packager and deliverer, fully accommodate the state agency consultants's RFC opinions. See DOT Nos. 920.587-018, 299.477-010 (each reflecting medium exertion and either occasional or no climbing, kneeling, crawling, stooping, or crouching). The VE testified that approximately 14,000 packaging jobs and more than 10,000 delivery jobs existed in the regional economy (see Tr. 63-64), which represent significant numbers under Fourth Circuit precedent, see Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the vocational expert . . . do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number."). Thus, even had the ALJ fully credited the state agency consultants's RFC opinions, the ultimate outcome of this case would not have changed.

Given that circumstance and Plaintiff's failure to explain how an explicit weighing of the state agency consultants's RFC opinions plausibly could have affected the outcome of the case (see Docket Entry 10 at 11-17), the Court should decline to remand on this ground, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th

Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that judgment be entered dismissing this action with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 26, 2016